



FILED

NOV 19 2012

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JEREMY YAMIN,
17 Leicester Road
Belmont, MA 02478

Petitioner,

v.

UNITED STATES DEPARTMENT
OF STATE,
2201 C Street, N.W.
Washington, DC 20520

Respondent.

Case: 1:12-mc-00616
Assigned To : Sullivan, Emmet G.
Assign. Date : 11/19/2012
Description: Miscellaneous

**PETITION FOR REVIEW OF ADMINISTRATIVE ORDER**

Petitioner, Jeremy Yamin, through counsel, HANNON LAW GROUP, and pursuant to § 1110 of the Foreign Service Act of 1980, 22 U.S.C. § 4140 (2006), respectfully presents to the United States District Court for the District of Columbia, this Petition for Review of the Foreign Service Grievance Board's, May 23, 2012 Order denying in part, Agent Yamin's motion for attorney's fees. A copy of the Order is attached to this Petition.

Dated: November 19, 2012

Respectfully submitted,

HANNON LAW GROUP

J. Michael Hannon, Jr.
Daniel S. Crowley
1901 18th Street, N.W.
Washington, D.C. 20009
(202) 232-1907
(202) 232-3704 Facsimile
jhannon@hannonlawgroup.com

*Attorneys for Petitioner Jeremy Yamin*

**FOREIGN SERVICE GRIEVANCE BOARD**
**SUITE 3100, SA-15**
**WASHINGTON, D.C. 20522-1531**
**Phone: (703) 875-5175**
**Fax: (703) 875-5177**

May 23, 2012

SUBJECT: Appeal of M. Jeremy Yamin
FSGB No. 2009-032
**ORDER: ATTORNEY FEES**

The Board has issued this **ORDER** in response to the subject appeal.

I certify that a true and correct copy of the Board's **ORDER** is being sent to:

M. Jeremy Yamin, Grievant, c/o Hannon Law Group
Sharon Papp, AFSA
Kathryn Nutt Skipper, HR/G
Melinda Chandler, HR/G

on this 23rd day of May 2012.

*Digitally signed by E. Charles Ash Date: 2012.05.23 09:49:32 -04'00'*

E. Charles Ash
Executive Secretary

Attachment:
As stated

cc: Panel: Horowitz, Blanford, Haynes

**BEFORE THE FOREIGN SERVICE GRIEVANCE BOARD**

In the Matter Between

| | |
|---|---|
| M. Jeremy Yamin<br>Grievant | Record of Proceedings<br>FSGB Case No. 2009-032 |
| And | May 23, 2012 |
| Department of State | **ORDER: ATTORNEY FEES** |

---

For the Foreign Service Grievance Board:

| | |
|---|---|
| Presiding Member: | Arthur A. Horowitz |
| Board Members: | James E. Blanford<br>Alfred O. Haynes |
| Senior Advisor | Jill E. Perry |
| Representative for the Grievant: | J. Michael Hannon,<br>Hannon Law Group |
| Representative for the Department: | Melinda Chandler<br>Director,<br>Grievance Staff |
| Employee Exclusive Representative: | American Foreign Service Association |

## ORDER: ATTORNEY FEES

## I. ISSUE

The issue presented in this case is whether grievant is entitled to an award of reasonable attorney fees, and if so, in what amount, as a result of this Board's decision in FSGB Case No. 2009-032 (March 14, 2011).

## II. BACKGROUND

In that earlier proceeding, grievant was charged with violating a published policy of the Department of State (Department, agency) which prohibited the use of official Department letterhead for any purpose other than "official business." Grievant ultimately received a one-day suspension (reduced from five days when the Deciding Official, Judith A. Chammas, dismissed the other specification against him) for misusing official government letterhead on four occasions in communicating with other Federal agencies in an effort to obtain a work visa for his Peruvian domestic employee so that she could accompany his family to the United States as he began his next tour of duty in Boston.[1]

After a grievance filed with the Department was denied in its entirety, grievant appealed his one-day suspension to this Board in an effort to overturn the penalty and expunge the disciplinary letter from his Official Performance Folder (OPF). Through his privately-retained counsel, grievant also requested a formal evidentiary hearing and embarked upon extended discovery, both pursuant to this Board's applicable regulations.

On April 28, 2010, a status conference was conducted with the parties. Since it did not appear at the time that any factual dispute or credibility issue had been raised, grievant's legal representative was asked why a hearing was deemed necessary. He replied that it was his law

[1] The discipline was imposed after a Special Agent of the U.S. Immigration and Customs Enforcement (ICE) complained to the Department that grievant had attempted to coerce Federal officials in Miami to admit his domestic employee with a work visa.

firm's preference to have a hearing (as was grievant's right in this disciplinary appeal under § 906.2 of the Board's regulations), and that additional documents would be introduced into the record at that time.[2] The parties also made arrangements to take depositions of potential witnesses.[3]

In a pre-hearing conference on July 8, 2010, the parties finalized the details of the hearing that was scheduled for and held on July 27, 2010.[4] Thereafter, the parties filed post-hearing briefs (13 pages for the Department and 23 pages for grievant) largely addressing whether a violation of agency policy and regulations had been committed by grievant, but also arguing whether the discipline imposed was appropriate.

As previously stated, this Board issued its decision on March 14, 2011. In that decision, the Board concluded that the Department met its burden of establishing that grievant improperly used official letterhead for personal correspondence with U.S. Citizenship and Immigration Services (USCIS), a division of the Department of Homeland Security.

The Board also held that the Department failed to establish that the imposition of a one-day suspension for such violation was reasonable under the circumstances. In so concluding, we noted that the Deciding Official misinterpreted, misapplied or failed to apply some of the *Douglas* factors in reaching the determination that a suspension was warranted. Accordingly, we found the suspension excessive and mitigated it to an admonishment. FSGB Case No. 2009-032 (March 14, 2011).

---

[2] As advertised, grievant's legal team submitted 133 exhibits at the hearing.

[3] One such deponent was David Savastuk, a Department employee who was to be called by grievant to testify about the degree of help provided by the agency in assisting Foreign Service Officers to obtain permission for their domestic employees to accompany them and their families from one South American country to another.

[4] The hearing began at 9:00 am and concluded at 6:10 pm. Five witnesses testified, including the grievant himself, Deciding Official Chammas, and Mr. Savastuk.

**The Petition for Attorney Fees**

Approximately one month later, grievant's legal representatives filed a petition on his behalf seeking "reasonable" attorney fees from the agency in the amount of $69,684.50 and costs of $1,960.98.[5] Accompanying the petition were billing records purporting to itemize the legal work performed and the hours expended by grievant's legal team in representing his interests in this proceeding.

On April 26, 2011, the Department filed a request for discovery regarding grievant's petition for attorney fees and a request to toll the time for responding to the petition. On May 4, grievant filed an opposition to the Department's requests and a motion for a protective order prohibiting further discovery into the matter of attorney fees. The agency filed a reply on May 12 in support of its requests and in opposition to grievant's motion for a protective order.

On May 19, the Board issued an Order, granting the Department's request for discovery and tolling the time for a reply to the petition for attorney fees. Thereafter, grievant responded to the agency's discovery requests on May 29, 2011.

On June 16, the Department filed a second request for discovery, stating why it needed to pose follow-up interrogatories and requests for additional documents. On July 5, grievant again filed a motion for a protective order and a motion that his attorney fee petition be granted as uncontested; the Department filed an opposition on July 8.[6]

On September 12, this Board issued an Order denying grievant's July 5 motion for a protective order. On October 3, grievant responded to the Department's second discovery

---

5 As a result of subsequent pleadings described herein, grievant amended his original request on November 17, 2011, increasing the amount of attorney fees claimed to $81,076.00 and costs to $2,150.88.

6 While the Department's request for follow-on discovery and grievant's responsive motions were pending, the attorney for grievant sent a letter to the Department dated July 12, 2011, acknowledging that "some of our responses to your original post-judgment discovery requests were unclear, and even incorrect." The letter sought to explain some of the apparent inconsistencies and attached revised billing statements.

request with additional information and with a general objection to providing information regarding payments of attorney fees made by an insurer on grievant's behalf.

## III. POSITIONS OF THE PARTIES

### The Grievant

In his petition for attorney fees, grievant argued that he successfully challenged the discipline imposed upon him by the Department through his appeal, and therefore must be deemed to be the "prevailing party" in this case. He further argued that reasonable attorney fees should be awarded as warranted in the interest of justice because the agency's action was "clearly without merit"; the agency "should have known that it would not prevail on the merits"; and the agency committed a gross procedural error. He further argued that the amount of attorney fees requested is "reasonable" under either the "Laffey Matrix"[7] or the "lodestar" concept which applies the so-called "Johnson factors."[8]

### The Department

On November 2, 2011, upon completion of discovery regarding the petition for attorney fees, the Department filed its opposition thereto. In sum, the Department argued that the petition should be denied for five separate reasons: (1) the petition was not accompanied by necessary supporting documentation, citing FSGB Case No. 2008-043 (April 9, 2010); (2) grievant is not a prevailing party; (3) even if he were, grievant has not established that an award of reasonable attorney fees is warranted in the interest of justice; (4) grievant failed to identify the fees that he incurred, making no mention in his petition that an insurer paid his attorney fees in this case; and (5) grievant failed to establish that the attorney fees he requests are reasonable.[9]

---

[7] *Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4 (D.C. Cir. 1984).
[8] *See Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974).
[9] On November 17, 2011, grievant filed a final reply to the Department's opposition to his petition for attorney fees, addressing the specific arguments set forth in the opposition. In order to avoid unnecessary repetition, the parties'

**IV. DISCUSSION AND FINDINGS**

This Board's authority to award attorney fees is found in section 1107(b)(5) of the Foreign Service Act of 1980, as amended (22 U.S.C. § 4137(b)(5)). That subsection provides:

> (b) If the Board finds that the grievance is meritorious, the Board shall have the authority to direct the Department—
>
> * * * * *
>
> (5) to pay reasonable attorney fees to the grievant to the same extent and in the same manner as such fees may be required by the Merit Systems Protection Board under section 7701(g) of title 5, United States Code.

Section 7701(g) provides, in part, that the MSPB may:

> (g)(1) [R]equire payment by the agency involved of reasonable attorney fees incurred by an employee . . . if the employee . . . is the prevailing party and the Board . . . determines that payment by the agency is warranted in the interest of justice[.]

In adjudicating attorney fee requests, this Board consistently has followed MSPB practices while at the same time exercising considerable judgment based upon the nature of the specific case before us. *See Sterner v. Department of the Army*, 711 F.2d 1563 (Fed. Cir. 1983). In order for the Board to exercise its authority to award attorney fees, a grievant must show that an attorney-client relationship exists; that legal services were rendered; and that fees have been incurred. Once these preliminary matters have been satisfied, a grievant also must prove that he is the "prevailing party," that an award of attorney fees is warranted "in the interest of justice," and that the fee request is "reasonable."

There is no dispute in this case that the grievant retained the Hannon Law Group as his attorneys to represent him in challenging the Department's decision to suspend him without pay for one day. It is also not disputed that the Hannon Law Group did, in fact, render legal services

---

specific arguments will be set forth hereafter in the Discussion and Findings, as the Board addresses and resolves them.

to grievant during the course of this disciplinary proceeding. While the Department appears to challenge whether grievant "incurred" attorney fees since he was covered by insurance which paid the Hannon Law Group for the legal services they rendered, we find that such fees were "incurred" even if grievant did not actually pay them. *See Lesmark, Inc. v. Pryce, et al.*, 334 F.2d 942 (D.C. Cir. 1964).[10] That is, attorney fees and costs may be recovered from a third party indemnitor despite having been paid directly by an insurer, as here.

We next turn to the three fundamental requirements established under the statutory framework quoted above that a grievant must meet in order to support an award of attorney fees. That is, the grievant must be the "prevailing party;" the award of attorney fees must be "warranted in the interest of justice;" and the fees must be "reasonable."

**Prevailing Party**

The standard for determining "prevailing party" status has been relaxed over the years. As the Supreme Court articulated in the *Buckhannon* case,[11] the claimant simply must receive "at least some relief on the merits of his claim before he can be said to prevail."

The Department argues that the grievant should not be deemed a prevailing party in this case because he had not "obtained all or a significant part of the relief sought in petitioning for appeal." *Sterner, supra,* 711 F.2d at 1566-67. While the Department is correct that grievant sought unsuccessfully to have the charge against him (i.e., misuse of official letterhead) dismissed, he did succeed in having the one-day suspension reduced to an admonishment and thereby received at least some of the relief sought in his appeal. *See Depte v. Veterans*

[10] *See also Crosson v. N.V. Stoomvaart MIJ "Nederland,"* 409 F.2d 865 (2d Cir. 1969); *Tillman, et al. v. Wheaton-Haven Recreation Association, Inc.*, 580 F.2d 1222 (4th Cir. 1978); *Bank of the West v. The Valley National Bank of Arizona,* 41 F.3d 471 (9th Cir. 1994); *North Central Airlines, Inc. v City of Aberdeen, S.D.*, 370 F.2d 129 (8th Cir. 1966).

[11] *Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources,* 532 U.S. 598 (2001).

*Administration,* 20 MSPR 362, 363 (1984), quoting *Sterner*, 711 F.2d at 1567 (where "a penalty is imposed against an employee and, as a result of his appeal, it is reduced, then that employee may be deemed to have prevailed."). Given the low threshold for achieving "prevailing party" status, we find that grievant met the applicable standard and therefore reject the Department's argument to the contrary.[12]

**Warranted in the Interest of Justice**

Both parties agree that attorney fees may be awarded only if the Board determines that such fees are warranted "in the interest of justice." They further agree that the Board should apply the framework established by the MSPB over 30 years ago in *Allen v. United States Postal Service,* 2 MSPR 420 (1980), in determining whether the "interest of justice" requirement has been met.

In *Allen*, the MSPB set forth five "directional markers" as guidance in determining whether an award of attorney fees meets this test. Grievant correctly asserts that he only needs to meet one of the markers in order to satisfy the "interest of justice" standard. FSGB Case No. 2005-049 (Sept. 6, 2006).

In this case, grievant relies on the second, fourth and fifth *Allen* markers, which are:

> (2) Whether the agency's action was "clearly without merit," or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;
>
> (4) Whether the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee;

[12] Specifically, we find the Department's attempt to distinguish *Depte* and *Sterner* unavailing. While those cases involved the mitigation of removal penalties to the lesser discipline of suspensions and this case involves the mitigation of a suspension to an admonishment, the same "prevailing party" principles apply.

(5) Whether the agency "knew or should have known that it would not prevail on the merits."

We find that the second and fourth *Allen* markers have not been met. Clearly grievant was not substantially innocent of the charges brought against him by the Department, since we found that he had violated the regulation prohibiting the use of official Department letterhead for other than official business. Similarly, the agency's action in charging him with such violation could not have been either clearly without merit or wholly unfounded.

Moreover, while we mitigated the one-day suspension to an admonishment because the Deciding Official had not applied the *Douglas* factors in a manner that demonstrated the reasonableness of the discipline imposed, it is entirely possible if not likely that a proper application of those factors would have resulted in our denial of the appeal in its entirety. In any event, we cannot conclude that the failure to apply the *Douglas* factors in a sufficiently elucidating manner constitutes a "gross procedural error."

We further find that the fifth *Allen* marker has been met. The Department should have known that it had to do a better and more complete analysis of the *Douglas* factors if it were to carry the burden of establishing the reasonableness of a one-day suspension in the circumstances of this case. We note that, as the Deciding Official could not cite to a prior comparable case in which a Foreign Service Officer had been disciplined solely for misusing official agency letterhead, it was incumbent upon her to explain why such a penalty was appropriate in this case.

The imposition of discipline is an integral part of the "merits" of the case, just as much as the burden of proving that a violation of the agency's regulations occurred. Under the circumstances, for the reasons we previously found[13] and summarize below, the Deciding

[13] See pages 13-17 of the FSGB decision on the merits of this case.

Official's analysis of the *Douglas* factors was inadequate, and therefore we conclude that the Department should have known that it would not prevail on this aspect of the merits of the case.

As discussed in our decision on the merits of this appeal, while grievant was not engaged in official agency business when attempting to secure his South American domestic employee's visa, and therefore violated Department regulations in doing so, the regulations and published explanatory materials could have been clearer in setting forth the line between "official" and "personal" business (see *Douglas* factor 9). Additionally, the Deciding Official misinterpreted and misapplied the second *Douglas* factor in deciding that grievant "intentionally" violated the prohibition against the use of official agency letterhead for personal rather than official business, thereby weighing this factor against grievant improperly.

Further, the Deciding Official's lack of explanation as to why the two cases cited on her case comparison worksheet were comparable, or why grievant deserved a suspension when it appeared that no Foreign Service Officer had been disciplined exclusively for such an infraction in the past, failed to meet the requirements of *Douglas* factor 6. Finally, the Deciding Official did not state that she considered mitigating the discipline imposed by taking grievant's expressed contrition and willingness to amend his future conduct into consideration (*Douglas* factors 5 and 10). Accordingly, we conclude that the fifth *Allen* marker has been met.

**Amount of the Fee Request Must Be Reasonable**

The third requirement that grievant must satisfy is that the amount of attorney fees requested must be "reasonable." This requirement has several components.

**Appropriate Hourly Rate**

First, the hourly rate charged to grievant and his insurance company by the law firm representing him must be reasonable. Grievant's attorneys have requested fees at the hourly rate

of $475 for counsel and $230 for associates under the so-called "Laffey Matrix" rates for 2011 (n.7, *supra*). However, as the Department correctly states, this Board, with judicial approval, has never applied the Laffey Matrix in computing attorney fees authorized under the Foreign Service Act. *See* FSGB Case No. 99-081 (Nov. 13, 2001). *See also* FSGB Case No. 99-020, *aff'd* D.D.C. Aug. 15, 2001); FSGB Case No. 96-073 (Feb. 12, 2003). Rather, the Board analyzes the reasonableness of a fee request according to the "lodestar" concept, set forth by the Supreme Court in *Hensley v. Eckerhart*, 461 U.S. 424 (1983).[14]

In applying the lodestar concept, we analyze the fee request according to the standards set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714 (5th Cir. 1974), referred to as the *Johnson* factors.[15] We are ever mindful of the "Board's responsibility to protect the federal fisc" in attorney fee matters (FSGB Case No. 2001-034), and will conduct an in-depth analysis of grievant's specific claims below. In our view the reasonable hourly rate should not be limited to what the attorneys charged grievant and his insurance company.[16] We view those rates as discounted in anticipation that grievant and his insurer might be required to pay the fees as unsuccessful litigants rather than have the Department pay them by order of this Board in the interest of justice.

We find the alternative hourly rates requested by grievant's attorneys reasonable and consistent with the rates charged in the Washington, D.C. area for similar legal work. Therefore,

---

[14] "Lodestar" refers to the number of hours reasonably expended on a case multiplied by a reasonable hourly rate.

[15] The Board summarized those factors in FSGB Case No. 2001-034 (Feb. 24, 2004) as follows:

> (1) time and labor required; (2) novelty and difficulty of issues; (3) skill requisite to perform the legal service properly; (4) preclusion of other employment due to acceptance of the case; (5) customary fee for similar work in the community; (6) whether there is a fixed or contingent fee; (7) time limitations imposed by client or circumstances; (8) amount involved and result; (9) experience, reputation and ability of the attorney, expertise in specialized field and demonstrated skill and ability; (10) undesirability of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases.

[16] That amount was $250 per hour for partners, $185 for associates and $90 for paralegals.

we will adopt those rates in our attorney fee calculations and will authorize attorney fees at the rate of $300 per hour for partner-level attorneys, $200 for attorney associates, $125 for law clerks, $90 for paralegals, and $45 for administrative assistants.[17]

**Number of Hours Reasonably Expended**

According to the billing summary and supplemental itemization as of July 12, 2011 submitted in support of the petition for attorney fees in this case, the law firm representing grievant expended approximately 295 hours of legal work on his behalf. The senior law partner spent about 62 hours; four different associate attorneys spent another 220 hours; two paralegals added another 3.5 hours; and an administrative assistant spent about 9.5 hours. All of these efforts were expended on a case that involved the one-day suspension of a DS agent who believed that his previously-exemplary and lengthy record of service to the Department would be forever ruined if such disciplinary action were permitted to stand.

For reasons that grievant's legal representatives never explained when asked, a hearing was demanded even though it appeared from the outset of this appeal that no factual issues or credibility matters were involved. Depositions were taken as part of an extensive discovery initiative; five witnesses were examined and cross-examined; literally more than a hundred exhibits were introduced into the record; and extensive post-hearing briefs were filed in addition to the customary submissions which ordinarily constitute the record upon which this Board decides the merits of grievance appeals. When the record of proceedings finally was closed, it remained clear to us that no dispute concerning material facts existed which required a hearing.

Once the merits decision was issued and the petition for attorney fees was filed, the Department's requests for clarification and explanations of acknowledged inconsistencies were

[17] According to Grievant's Reply to the Department of State's Opposition to His Petition for Attorney's Fees dated November 17, 2011, at page 7, these are "[t]he customary billing rates charged by Hannon Law Group[.]"

met with repeated resistance requiring this Board to issue orders twice directing grievant's legal representatives to respond. To say that this case was extensively over-litigated from start to finish would be a significant understatement.

Although we do not question either grievant's right to demand a hearing in this disciplinary case under the Board's regulations or the accuracy of the itemized bill for services rendered that was submitted by grievant's attorneys, we do question whether the Department should be required to pay for the choices that grievant and his legal representatives made. In short, this Board concludes that the amount of attorney fees claimed is decidedly not "reasonable."

This is not to say that a lesser amount of attorney fees would be unreasonable. As a starting point, we note that while grievant must be deemed the "prevailing party" because his suspension was mitigated to an admonishment, grievant did not prevail on his essential contention that he did nothing wrong by using official Department letterhead on four separate occasions for personal rather than "official business". We specifically found that the use of official letterhead for such purposes violated applicable agency regulations. Accordingly, all of the time and effort expended by his attorneys in attempting to defeat the Department's finding that grievant violated such regulations cannot be recompensed. *See* FSGB Case No. 95-18 (Feb. 19, 1999), citing *Hensley v. Eckerhart, supra,* which "established the principle that time spent on unsuccessful claims should be excluded in determining the fee." *See also* FSGB Case No. 2001-034 (Feb. 24, 2004).

The great majority of grievant's case involved the attempt to establish that, as the Department provided assistance to members of the Service in hiring domestic employees, he was engaged in "official business" when seeking to obtain visas for his domestic employee and that

his use of official letterhead was appropriate. His reliance on the deposition and hearing testimony of a purported expert in such matters (see n.3, *supra*) proved unavailing. He did not defeat the agency's imposition of discipline by refuting the underlying premise for such action. He only succeeded in having the suspension mitigated because of the Deciding Official's failure to explain and justify the reasonableness of the penalty through the proper application of the *Douglas* factors.

Even the deposition and subsequent examination of the Deciding Official, as dramatic as it was, did not contribute materially to the Board's mitigation of the penalty. That is, the Deciding Official's decision itself demonstrated the absence of sufficient explanation and justification for the discipline imposed. The Deciding Official's testimony merely underscored that deficiency and therefore was unnecessarily cumulative. Nevertheless, since such efforts were expended as part of a successful strategy designed to cause a rescission of the suspension, we find that the hours billed in this regard should be paid.

However, all of the time and effort expended by grievant's attorneys to portray him as a dedicated, highly educated and effective Foreign Service Officer were unnecessary because the Department never disputed any of these matters. To be sure, grievant possesses all of these attributes and clearly is a credit to the Foreign Service. But the Deciding Official already took grievant's exemplary record and lack of prior discipline into consideration when applying the *Douglas* factors to determine what disciplinary action was warranted. Similarly, character witnesses attesting to grievant's reputation for veracity largely miss the point, since there were no disputes relating to credibility in this case. Moreover, all of the testimony recounting the frustrations that grievant experienced in his Herculean efforts to persuade the individuals in other Federal agencies that his domestic employee was entitled to and should be granted an entry visa

and work permit, while colorful and contextual, again was irrelevant. The only issues before this Board were (1) whether grievant's admitted use of official Department letterhead on four occasions to overcome the opposition he encountered and achieve his objectives violated applicable regulations, and (2) if so, whether the one-day suspension imposed for such infractions was reasonable.

Accordingly, we conclude that the hours spent in other than these narrowly circumscribed pursuits should not be deemed reasonable and compensable. *See Hensley* ("district court should exclude from . . . initial fee calculation hours that were not 'reasonably expended' [and] counsel for the prevailing party should . . . exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]")

Since grievant did not prevail on the first issue, but rather the agency successfully met the burden of proving that the use of official Department letterhead in the circumstances of this case was for personal business and therefore violated applicable regulations, we cannot order the payment of any attorney fees attributable to the attempt to defeat that claim.

While it is difficult to separate the number of hours reasonably spent by grievant's attorneys in successfully challenging the discipline imposed by the agency for the prohibited use of official letterhead, we have carefully examined the billing records submitted in support of the petition for attorney fees and the entire record of proceedings in an effort to do so. In exercising our informed judgment within the bounds of discretion bestowed upon us by Congress and applicable judicial and MSPB precedent,[18] we conclude that 18 hours at the rate of $300 per hour and 22 hours at the rate of $200 per hour should be paid as attorney fees attributable to success on the second issue set forth above.

[18] *See Hensley, supra. See also* FSGB Case No. 98-052 (Order: Attorney Fees dated December 15, 2000); FSGB Case No. 95-18 (Order: Attorney Fees dated February 19, 1999).

With regard to the petition for attorney fees itself, we conclude that the time reasonably spent in drafting the request and in preparation of the supporting documentation should be paid by the Department as well. We specifically exclude from the foregoing total any hours spent in challenging the Department's discovery requests for clarification and explanation of the amounts claimed as attorney fees, since we have found such requests to be reasonable and grievant's challenges thereto unjustifiable. Accordingly, we shall order payment by the Department of an additional five hours of attorney fees at the rate of $300 per hour and five hours at the rate of $200 per hour.

**Expenses of Litigation**

Finally, grievant has requested reimbursement of certain costs and expenses in the aggregate amount of $2,150.88. As set forth in *Bennett v. Department of Navy*, 699 F.2d 1140 (Fed. Cir. 1983) and *O'Donnell v. Department of the Interior*, 2 MSPR 445 (1980), reimbursable expenses "are limited to reasonable out-of-pocket expenses received by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." As *Bennett* specifies, the costs of transcripts are not reimbursable. Similarly, photocopying expenses are not allowed. *See Bennett; Koch v. Department of Commerce*, 19 MSPR 219, 221-22 (1984). However, postage and courier services, including Federal Express delivery, are reimbursable.[19] Telephone charges and facsimiles also are covered.[20] Electronic, computerized legal research is compensable as well.[21] Accordingly, with regard to the itemized list of expenses dated April 13, 2011, amounting to a total of $1,960.98, attached as Exhibit 4 to grievant's petition for attorney

---

[19] *See Taylor v. Department of Army*, 29 MSPR 424, 428 (1985), *Coltrane v. Department of Army*, 32 MSPR 6, 10 (1986); *Social Security Administration v. Balaban*, 39 MSPR 622, 625-26 (1989).
[20] *See Balaban, supra, followed in Garcia v. USPS*, 75 MSPR 198, 201 (1997); *Russell v. Department of Navy*, 43 MSPR 157, 163).
[21] *See Thomas v. USPS*, 87 MSPR 331, 343-44 (2000).

fees, we must disallow all but $85.08.[22] While grievant claimed additional expenses of $189.90 in his November 17, 2011 reply to the Department's opposition to his petition for attorney fees, there was no separate itemization provided. Thus, we must reject such unsupported claim.

**V. ORDER**

In sum, we conclude that the Department must pay grievant a total of $12,300 in attorney fees and $85.03 in reimbursable expenses.

**For the Foreign Service Grievance Board:**

Arthur A. Horowitz
Presiding Member

James E. Blanford
Member

Alfred O. Haynes
Member

[22] That is, all expenses for transcripts, copying and printing may not be reimbursed. Only facsimile, telephone, postage, courier service and electronic research are compensable.